UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **PERRYVILLE GAS STORAGE, LLC** | **CIVIL ACTION NO. 11-1883** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **DAWSON FARMS, LLC** | **MAG. JUDGE KAREN L. HAYES** |

**RULING**

Pending before the Court is a Motion for Partial Summary Judgment Regarding Damages ("Motion for Partial Summary Judgment") [Doc. No. 68] filed by Plaintiff Perryville Gas Storage, LLC ("Perryville"). On October 1, 2012, Defendant Dawson Farms, LLC ("Dawson Farms") filed an Opposition Memorandum [Doc. No. 71]. On October 9, 2012, Perryville filed a Reply Brief in Support of Motion for Partial Summary Judgment Regarding Damages ("Reply") [Doc. No. 80].

For the following reasons, the Motion for Partial Summary Judgment is GRANTED IN PART and DENIED IN PART.

**I.      FACTS AND PROCEDURAL BACKGROUND**

Perryville is a natural gas company as defined by the Natural Gas Act (the "Act"), 15 U.S.C. § 717(a)(6), and has been issued a Certificate of Public Convenience and Necessity by the Federal Energy Regulatory Commission ("FERC") to construct, operate, and maintain an interstate natural gas storage facility and associated facilities, including two natural gas pipelines.

The pipelines will cross over and impact land owned by Dawson Farms, which is in the business of growing, harvesting, curing, packing and marketing sweet potatoes. In July 2010, Perryville contacted Dawson Farms and attempted to negotiate the purchase of a servitude.

Dawson Farms declined the offer.

On October 6, 2011, Perryville notified Dawson Farms of its intent to file a condemnation action in this Court.

On October 25, 2011, Perryville filed an original verified Complaint for condemnation under the Act and pursuant to Federal Rule of Civil Procedure 71.1, seeking to condemn a fifty (50) footwide servitude for the natural gas pipelines and temporary servitudes for work space under, upon, across, and through the land owned by Dawson Farms. Perryville also filed a Motion for Confirmation of Condemnation of Servitude and for Preliminary and Permanent Injunction Authorizing Immediate Entry [Doc. No. 5]. In the motion, Perryville requested that the Court enter an order confirming that Perryville had the substantive right to condemn Dawson Farms' property and to obtain immediate access to 511 acres under the Act.[1]

On December 1, 2011, the case came for hearing on Perryville's motion. After a conference was held, the parties stipulated and agreed to the Court's granting of Perryville's motion, subject to certain stipulated conditions. [Doc. No. 18]. The Court granted Perryville a preliminary and permanent injunction permitting it access to Dawson Farms' property to conduct surveying and other preparatory activities prior to May 1, 2012, and to commence construction related activities beginning May 1, 2012. As part of its analysis, the Court concluded that

---

[1]Section 717f(h) of the Act provides, in pertinent part:

When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way . . . it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State Courts.

Perryville had met its burden of demonstrating the four factors necessary for the granting of injunctive relief, including a determination that natural gas producers and the public at large would be irreparably harmed if the pipelines were not in-service by December 31, 2012. Because of construction constraints resulting from the black bear denning season, Perryville had to access the property prior to May 1, 2012, in order to meet the in-service deadline.

The original time constraints required Perryville to begin activities during the sweet potato crop cycle, which generally runs from May through November. According to Lev Dawson ("Dawson"), a member and corporate representative of Dawson Farms, in December 2011, Dawson Farms determined that it would cost more than $1.5 million to plant sweet potatoes on the 511 acres, known as the Magruder and Santiago fields. Given the uncertainty of the damage from the construction, Dawson attests that Dawson Farms elected not to plant its sweet potato crop in the Magruder and Santiago fields and instead entered into a verbal lease agreement with a third party, David Cook ("Cook"), the week before Christmas. Cook intended to plant corn and agreed to pay 25% of the gross revenue of the corn production to Dawson Farms.

On or about January 25, 2012, according to Dawson, the Magruder and Santiago fields were treated with 24D, an herbicide used in the production of corn. Dawson attests that 24D cannot legally be used to treat fields for the production of sweet potatoes and the herbicide can damage sweet potatoes.

However, Perryville was able to negotiate a new mandatory in-service date of August 1, 2013, permitting it to delay construction until after the 2012 sweet potato crop cycle. On February 8, 2012, counsel for Perryville sent correspondence to counsel for Dawson Farms informing him that Perryville would delay its construction in order to allow Dawson Farms to plant its 2012

sweet potato crop. On February 10 and 11, 2012, counsel for Perryville emailed counsel for Dawson Farms to ensure that he was aware that Perryville would not begin construction during the 2012 season and that Dawson Farms could proceed with its planting of the sweet potato crop, regardless of whether a settlement was reached.

On March 2, 2012, counsel for Dawson Farms responded by email and stated that Dawson was "not comfortable making plans to plant these fields . . . . He has had a number of bad experiences with pipeline companies in the past where they have told him one thing, only to change their position at a later date[.]" [Doc. No. 68, Exh. 3]. Counsel for Dawson Farms never mentioned Dawson Farms' lease to Cook.

On March 2, 2012, counsel for Perryville responded by email and further responded on March 5, 2012, by certified letter. She explained that Perryville had worked out an extension of its mandatory in-service date and made plans to construct the pipelines after the 2012 season, so "Mr. Dawson will be causing himself unnecessary damage if he chooses not to plant his crop this season." [Doc. No. 68, Exh. 4]; *see also* [Doc. No. 68, Exh. 5].

On May 11, 2012, counsel for Perryville deposed Dawson. At that time, Perryville was notified that Dawson Farms would use actual production numbers to support its claims, but Dawson Farms did not produce those numbers. When presented with an aerial depiction of the Magruder and Santiago fields, Dawson testified that, if the pipelines were located where Perryville's counsel indicated during the deposition, the construction would not affect all 511 acres. However, no survey of the fields was completed until August 2012.

## II. LAW AND ANALYSIS

### A. Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine" dispute exists if, based on the evidence, a reasonable jury could return a verdict for the nonmoving party. *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). In reviewing the evidence, the Court draws all "reasonable inferences in favor of the nonmoving party" and refrains "from making credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citation omitted). Nevertheless, if a movant has properly supported a motion for summary judgment, the opposing party may not rely merely on allegations in its own pleadings, but must identify specific evidence in the record and articulate how that evidence supports its claims. *See Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). The opposing party cannot defeat a motion for summary judgment by relying on conclusory allegations or unsubstantiated assertions. *Id.*

### B. Damages

#### 1. Crop Damages for the 2012 Sweet Potato Growing Season

Although this matter was brought under the Act and Rule 71.1, the United States Court of Appeals for the Fifth Circuit has determined that just compensation for damages is a matter of Louisiana law. *See Miss. River Transmission Corp. v. Tabor*, 757 F.2d 662, 665 n.3 (5th Cir. 1985). Louisiana law provides that a defendant in a condemnation action has a duty to mitigate damages. *Unverszagt v. Young Builders, Inc.*, 215 So.2d 823, 825 (La. 1968). Mitigation of damages, also known as the doctrine of avoidable consequences, requires that a party exercise the

5

reasonable diligence and care of a person of ordinary prudence. *Id.*; *see also Jacobs as Tutor of Jacobs v. New Orleans Public Serv., Inc.*, 432 So.2d 843, 846 (La. 1983). The determination of reasonable care is an issue of fact based upon the circumstances of a particular case. *See Gray & Co., Inc. v. State ex rel. Dept. of Transp., Office of Highways,* 2011 WL 3243103, at *6 (La. App. 1 Cir. 2011); *see generally George v. Reliance Ins. Co.*, 819 So.2d 453, 455 (La. App. 3 Cir. 2002).

Perryville posits that Dawson Farms unreasonably failed to mitigate damages by failing to plant its sweet potato crop for the 2012 cycle and points out that counsel never mentioned the lease to Cook, only Dawson's distrust of pipeline companies. Dawson Farms responds that it engaged in a reasonable cost analysis and determined an appropriate course. The two positions require the Court to engage in fact-finding and credibility determinations. Thus, Perryville's Motion for Partial Summary Judgment based on this argument is DENIED.

    2.  **Alternative Reduction in Damages**

Even if Dawson Farms is entitled to damages for the loss of its 2012 sweet potato crop, Perryville alternatively moves for summary judgment on two bases: (1) Dawson Farms admits that the entire 511 acres of its crop would not have been affected by the pipelines and (2) Dawson Farms admits that its original estimate of crop damages of $3.9 million was a gross revenue figure, which did not deduct the costs and expenses associated with producing the crop. With regard to the second basis, Perryville relies on the 2011 budget figures provided by Dawson Farms.

Dawson Farms responds that Dawson testified during his deposition that the entire 511 acres would not have been affected **if** the proposed route of the pipeline was constructed as

counsel for Perryville indicated, but that issue had not been resolved in December 2011 when he made the decision to lease the Magruder and Santiago fields to Cook. Further, Dawson Farms contends that Perryville's proposed reduction in damages for costs and expenses improperly relies on 2011 budget figures when Perryville was told during Dawson's deposition that Dawson Farms would present an actual damages model. Dawson Farms retained an expert, Mike Martin, who has prepared a report with those figures in it.

In its Reply, Perryville responds that it did not obtain injunctive relief over the entire 511 acres and the exhibit presented to Dawson at his deposition was an aerial depiction of the pipelines' location approved by the Court. Additionally, Perryville points out that Dawson Farms had not provided the expert report and/or actual damages model by September 6, 2012, when Perryville filed the Motion for Partial Summary Judgment. Perryville relied on the 2011 budget figures because that was the only estimate of costs it had been provided.

First, the Court finds that the parties' arguments regarding the anticipated and/or actual effect on the 511 acres involve issues of fact on mitigation to be determined at trial. Thus, to the extent that Perryville seeks a determination of the specific number of acres affected, that issue is reserved for trial, and the Motion for Partial Summary Judgment is DENIED.

Second, the Court finds that in its response, as well as based on Dawson's deposition testimony, Dawson Farms effectively admits that $3.9 million is not an appropriate damage figure. Thus, Perryville's Motion for Partial Summary Judgment is GRANTED to the extent Dawson Farms' initial estimate of crop damages of $3.9 million must be reduced by the costs and expenses of producing the sweet potato crop. Nevertheless, the Court finds that the calculation of the actual amount of the reduction for costs and expenses is a fact issue RESERVED FOR TRIAL.

### III. CONCLUSION

For the foregoing reasons, Perryville's Motion for Partial Summary Judgment [Doc. No. 68] is GRANTED IN PART and DENIED IN PART. To the extent that Perryville moves for summary judgment on the basis that Dawson Farms unreasonably failed to mitigate its damages by refusing to plant the 2012 sweet potato crop, the motion is DENIED. Further, to the extent that Perryville moves for summary judgment on the actual acreage affected, the motion is DENIED. To the extent that Perryville moves for summary judgment that Dawson Farms' initial estimate of crop damages of $3.9 million must be reduced by the costs and expenses of producing the sweet potato crop revenue, the motion is GRANTED. The calculation of the actual amount of the reduction for costs and expenses is RESERVED FOR TRIAL.

MONROE, LOUISIANA, this 12th day of October, 2012.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE